## William L. Bemis *vs.* Cynthia Call.

If a woman mortgages her land to secure a debt of a third person, her subsequent marriage to the mortgagee will not extinguish the mortgage; but after his death his legal representatives may enforce it. Nor will the appointment of the mortgagee as administrator of the estate of the third person have this effect, if no funds come into his hands which can be applied to the payment of the mortgage debt.

In such case, the fact that during the marriage her husband undertook to foreclose the mortgage, and that he executed a will treating the mortgaged premises as his own, cannot legally prejudice her rights after his death.

A married woman cannot during coverture be barred of her estate, held without any limitation to her sole and separate use, by an *estoppel in pais.*

Writ of entry to foreclose a mortgage of land in Springfield.

At the trial in the superior court, before *Vose,* J., without a jury, it appeared that the defendant, on the 8th of April 1846, being then the wife of Azariah S. Waterman, executed jointly with him, and for the purpose of securing his note, a mortgage of the premises, which were then owned by her, to George Stebbins. Azariah died in 1850, without having paid the note. On the 10th of June 1852 Stebbins assigned the note and mortgage to Isaiah Call, by whom the amount due upon the note was paid to him; and on the 20th of said June, Call and the defendant were married. On the 10th of July following, Call was appointed administrator of the estate of said Azariah, and never represented the estate as insolvent; but all the assets of the estate were applied in payment of the expenses of his last sickness and funeral and charges of administration. On the 10th of June 1854, Call made an open and peaceable entry upon the

premises for the purpose of foreclosure; and in November 1860 he died, leaving a will in which he devised all his real and personal estate in trust for the defendant during her life, and after her death to his heirs at law.   The plaintiff is the administrator *de bonis non* of Call's estate.

The defendant introduced certain evidence tending to show that before her marriage to Call he promised to pay the mortgage debt if she would marry him, and afterwards both before and after the marriage stated that he had done so.

George Stebbins, called as a witness by the plaintiff, testified that Call came to him and inquired the amount due upon the note, and said he had money coming from Texas and would pay it; that he afterwards paid it, and wished to have the mortgage assigned, and said nothing of a discharge.   The defendant objected to his testifying to acts and conversation of Call in her absence; but the judge admitted the evidence *de bene.*

James H. Call, son of Isaiah Call, was produced as a witness for the plaintiff, and his testimony was not objected to, it being understood by the defendant's counsel that his testimony would be received under the same objection made to the testimony of Stebbins; and he testified that he examined the mortgage note and assignment, which were brought by his father to him before the marriage; and that his father had no other real estate at the time of his death than the mortgaged premises.

The judge was not satisfied, upon all the evidence, that Isaiah Call, before his marriage to the defendant, agreed to pay the debt to Stebbins and extinguish the mortgage upon her land. The defendant asked the court to rule as follows:

" 1. That the intermarriage of the testator, Isaiah Call, with the defendant, operated to discharge the mortgage and estop said Call or his representatives from enforcing it against her.

" 2. That the appointment of Isaiah Call as administrator of Azariah S. Waterman operated to estop him and his representatives from enforcing said mortgage against her, especially when coupled with the fact that he never represented the estate of said Waterman to be insolvent.

" 3. That the fact that Isaiah proposed to pay said mortgage,

if she would marry him, and afterwards, both before and after the marriage, stated to the witnesses that he had agreed to pay the mortgage, with the further fact of the marriage, constitute a bar to this action.

"4. That no act of the defendant during the existence of the coverture can legally prejudice her in this action.

"5. That the fact that Isaiah undertook to foreclose the mortgage, and that he made and executed a will treating this as his property, cannot legally prejudice the defendant in this action."

The judge declined to make any of the rulings asked for, and directed conditional judgment to be rendered for the plaintiff. The defendant alleged exceptions.

*H. Morris,* for the defendant. 1. The marriage extinguished the mortgage. By this marriage Isaiah Call became entitled to redeem the mortgage, and also entitled to all the defendant's personal property, so that she no longer had the means of redeeming it. She could no longer make a valid contract with him, and could not pay him money on a debt. On the other hand, he became liable in law to pay her debts and to perform her covenants in the mortgage. 2. His appointment as administrator of the estate of Azariah S. Waterman estops him and his representatives to enforce the mortgage. 3. The fourth ruling asked for should have been made. Her acts while under coverture should not prejudice her. *Lowell* v. *Daniels,* 2 Gray, 161, 168. *McGregor* v. *Wait,* 10 Gray, 72. *Houghton* v. *Hapgood,* 13 Pick. 154. 4. The fifth ruling asked for should also have been made. These acts of Isaiah Call were not done with the defendant's consent; they were in support of his own interest; they were not the acts of one under whom the defendant claims title; but, so far as she is concerned, they were *res inter alios.* *Hunt* v. *Roylance,* 11 Cush. 117. *Long* v. *Lamkin,* 9 Cush. 366. *Bartlet* v. *Delprat,* 4 Mass. 702. *Aldrich* v. *Earle,* 13 Gray, 578.

*M. P. Knowlton,* for the plaintiff. 1. Prior to the marriage, Isaiah Call had a valid claim against the estate of Azariah S. Waterman, secured by the mortgage in controversy. The marriage did not extinguish that claim; and the mortgage still survived

as collateral security. A mortgage is not necessarily discharged by assignment to the owner of the equity of redemption. *New England Jewelry Co.* v. *Merriam*, 2 Allen, 390. *Evans* v. *Kimball*, 1 Allen, 242. A tenant by the curtesy may redeem his wife's mortgage, and hold it as a claim against her estate. *Warren* v. *Jennison*, 6 Gray, 559, and cases there cited in argument. 2. The facts show that the mortgage debt was not and could not be paid from Waterman's estate ; and under these circumstances it was not the administrator's duty to represent the estate as insolvent. Gen. Sts. *c*. 97, § 20. *Kinney* v. *Ensign*, 18 Pick. 235. 3. The fourth and fifth requests for rulings became immaterial by the general finding that no contract was proved. It does not appear that any injury resulted to the defendant from the refusal to adopt these rulings. 4. The agreement alleged to have been in consideration of marriage was void, because not in writing. Gen. Sts. *c*. 105, § 1. The marriage was not a part performance. *Dundas* v. *Dutens*, 1 Ves. Jr. 196. And there was no part performance by Call, because he did not do what it is contended that he contracted to do.

DEWEY, J. The defendant insists that the marriage of the plaintiff's testator with her operated to extinguish this mortgage, and bar his representatives from enforcing it against her. But we find no authority for that position. The debt, for securing the payment of which this mortgage was given, was not her debt, and no personal liability to pay the same existed on her part. She had under the forms sanctioned by law conveyed the land then belonging to her to secure the payment of a promissory note of A. S. Waterman, her former husband. She was, at the time of her marriage with Isaiah Call, seised only of a right in equity to redeem the land upon condition of the payment of the debt secured by the mortgage. This marriage did not cancel that debt or the mortgage given to secure it. Although it might operate to prevent Call from instituting any legal proceedings to foreclose the mortgage during the continuance of the marriage relation, it did nothing more. The relation of husband and wife being dissolved by the death of Call, the mortgage may be enforced by his representatives against the defendant, or any person claiming to hold the land adversely to the mortgage.

The acquisition by Call of an interest in the equity of redemption, by force of the marriage with the defendant, and also his rights as tenant by the curtesy, do not defeat the mortgage Although he might have the right to redeem, he was under no legal obligation to do so. His rights in this respect acquired by the marriage could have been no greater than his rights would have been as a purchaser from a third person of an equity of redemption, when he held an interest as the mortgagee. Such purchase of the equity of redemption by the person holding the mortgage does not extinguish the mortgage, or necessarily operate as a merger, where there is an intervening estate, or where it is for the interest of the purchaser to continue to hold the estate as mortgagee.

Nor does the appointment of Call as administrator of the estate of Waterman operate to defeat this mortgage and prevent the maintenance of the present action. The case finds that no assets came to his hands as administrator which could be applied to the payment of this or any other debt, excepting those of the class called privileged debts, and this is a sufficient answer, without entering upon the question of his duty to have applied the assets, had there been any, in payment of this mortgage and to the relief of the tenant.

The finding of the judge to whom the case was submitted by the parties conclusively settles all questions of fact, if no rule of law has been violated in the admission or rejection of evidence, or in the application of the evidence to the points in issue. Subject to this exception, we must assume, from the fact that the judgment of the court was rendered in favor of the plaintiff, that there was no actual payment of the debt secured by the mortgage, there being nothing to lead us to suppose that the court did not adopt the rule of law now so fully settled, that when nothing is found due, an action to foreclose a mortgage cannot be maintained.

Under the exception already stated, we must take the fact to be as found by the judge, that the evidence was insufficient to show that any contract was made by Call with the defendant prior to the marriage, that in consideration of her promise to

Bemis *v.* Call.

marry him he would pay the debt and extinguish this mortgage; and this finding is an answer and a sufficient reason for refusing to adopt the third prayer for a ruling.

The only objection taken as to the admission of evidence was as to that of George Stebbins. Upon the statement of this evidence as detailed in the bill of exceptions, we see nothing in it that is objectionable, unless it be that some portions of it were wholly immaterial. It did not add to, vary or control the written assignment of the mortgage, under which Call held his title.

The evidence of James H. Call, if taken to have been received under objection, seems to be similar in this respect, and furnishes no sufficient reason for granting a new trial.

The fourth ruling asked for by the defendant was a proposition apparently too broad in its terms to require an unqualified assent thereto. If by it nothing more was asked than a ruling as to her sole acts, or to apply to the case the legal principle that a married woman cannot during coverture be barred of her estate, held without any limitation to her sole and separate use, by an *estoppel in pais* resulting from any acts of her own, it would be correct. *Lowell* v. *Daniels*, 2 Gray, 161.

But in reference to the fifth ruling in matter of law asked, " that the fact that the said Isaiah undertook to foreclose the mortgage, and the fact that he made and executed a will treating this as his property, cannot legally prejudice the defendant in this action," the ruling asked was correct, and should have been adopted by the court. *Aldrich* v. *Earle*, 13 Gray, 578. The ruling was called for by the evidence in the case, and precisely directed to the effect to be given to that evidence. The question of fact seems to have been decided upon the whole evidence, of which this was a part. Such being the case, the finding of the court was under an erroneous ruling in matter of law, and for this cause the exceptions must be sustained.